**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **JOSE BONILLA, CARLOS ALEXI RODRIGUEZ CABRERA, AND RAUL BAIRES,** ***individually and on behalf of all others similarly-situated*****,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**HENSEL PHELPS CONSTRUCTION CO.,**<br><br>**and**<br><br>**PILLAR CONSTRUCTION, INC.,**<br><br>**Defendants.** | Civil Action No. 26-00814 |

**CLASS ACTION COMPLAINT**

Plaintiffs Jose Bonilla, Carlos Alexi Rodriguez Cabrera, and Raul Baires ("Named Plaintiffs"), individually and on behalf of all others similarly-situated, allege as follows:

**NATURE OF THE ACTION**

1. Plaintiffs and similarly-situated employees are construction workers who performed carpentry work on a hotel, waterpark, and convention resort being built for Kalahari Resorts & Conventions in Spotsylvania County, Virginia (the "Project") and who were unlawfully misclassified as independent contractors, thereby depriving them of the protections of law provided to employees. Further, Plaintiffs and similarly-situated employees were also deprived of overtime wages and pay—or had their pay delayed for weeks and months—for work they performed on the Project.

2. Kalahari Resorts & Conventions is a privately-owned chain of Africa-themed family resorts known for their large indoor waterparks, hotel accommodations, dining, and convention facilities. The Project is Kalahari Resorts & Conventions' fifth and largest resort. Set to open in November 2026, the Project is an approximately $900 million, 1.38 million-square-foot development on roughly 135 acres, comprised of a 907-room hotel, a 175,000-square-foot indoor waterpark, a 10-acre outdoor waterpark, roughly 150,000 square feet of convention and meeting space, and multiple restaurant and retail facilities.

3. Defendant Hensel Phelps Construction Co. ("Hensel Phelps") is the Project's general contractor.

4. Hensel Phelps subcontracted certain carpentry work to Defendant Pillar Construction, Inc. ("Pillar").

5. Plaintiffs and similarly-situated employees were employed by Pillar but were paid by Pillar's labor broker entities owned by Denise Barrera and known as Denise's Drywall, LLC and/or its related entities ("Denise's Drywall").

6. The Commonwealth of Virginia and Spotsylvania County, Virginia provided substantial tax incentives and financing to the Project with the promise that construction of the Project would create hundreds of jobs (estimated to reach 800 jobs at the peak of the construction), thereby benefitting the local economy and taxpayers.

7. The Commonwealth of Virginia is providing funding for the Project through its Tourism Development Financing Program, along with rebates on sales, food and beverage, hotel beds, and admissions taxes, as well as grants related to tangible personal property, licenses, permit fees, and water and sewer fees.

8. Spotsylvania County committed to contribute approximately $74.8 million in financing to the Project. The County touted the Project as "one of the largest projects ever constructed in this region. It will create hundreds of jobs during construction. They will have a positive impact on our local economy."

9. Hensel Phelps set the pace of construction on the Project and pressed Pillar to increase production to meet the Project's publicly announced November 12, 2026 opening date. Pillar's foreman, Hector, told Plaintiffs and similarly-situated employees that Hensel Phelps had informed Pillar that the Project was behind schedule and that the workers "needed to help them increase production so that the work could be completed on time." Pillar and its labor broker Denise's Drywall, in turn, required Plaintiffs and similarly-situated employees to work extended hours and overtime shifts, including on Saturdays. Defendants knew that Plaintiffs and similarly-situated employees were regularly working these overtime hours, and Pillar knew the overtime was not being paid at the required premium rate because Pillar itself set and controlled the amount it paid Denise's Drywall for that labor and never funded an overtime premium.

10. The failure to pay wages owed and the weeks- and months-long delays in payment have caused Plaintiffs and similarly-situated employees to fall behind on rent and mortgage payments, struggle to provide food and necessities for themselves and their families, and incur late fees and interest charges on bills they could not pay because their wages were withheld. Many Plaintiffs and similarly-situated employees have young children who depend on their income. The stress and anguish of not knowing when or if they would be paid for work already performed has taken a severe emotional and physical toll.

11. The failure to pay overtime wages has deprived Plaintiffs and similarly-situated employees of the extra income they need to make ends meet and achieve financial stability for

themselves and their families, undermining the fundamental purpose of the FLSA and Virginia's overtime laws.

12. Defendants' illegal practices to limit employees' wages allowed Defendants to reduce their labor costs and underbid law-abiding competitors. As the general contractor on the Project, Defendant Hensel Phelps profited from engaging a low-road subcontractor and is liable under Virginia law for the wage theft committed by Pillar and its labor brokers.

13. The fact that the Project is being built with public subsidies and tax incentives makes Defendants' conduct all the more egregious. High-profile construction projects funded with public dollars and political support, such as the Project at issue in this case, come with promises of good jobs with fair pay that will create middle-class opportunities for workers in the community. Instead, Defendants profited from the labor of Plaintiffs and similarly-situated employees while leaving them and their families impoverished, depriving them for weeks at a time of the wages and overtime pay they depended on to support themselves and their households. Defendants' low-road practices robbed Plaintiffs and similarly-situated employees of the wages and financial security to which they were entitled, forcing them to endure poverty conditions for the sake of Defendants' profit.

14. Further, Defendants' illegal schemes also cheated taxpayers out of tax revenue that would have been generated on the stolen wages. Public dollars have underwritten a naked scheme of wage theft to the detriment of the community, the local economy and Plaintiffs.

15. Named Plaintiffs seek for themselves unpaid wages and overtime compensation, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").

16. Named Plaintiffs also seek, on behalf of themselves and the class and two subclasses defined below pursuant to Federal Rule of Civil Procedure 23, unpaid wages, unpaid overtime wages, liquidated and treble damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 *et seq.* ("VWPA"); the Virginia Minimum Wage Act, Va. Code Ann. § 40.1-28.8 *et seq.* ("VMWA"); the Virginia Overtime Wage Act, Va. Code Ann. § 40.1-29.2 ("VOWA"); the Virginia Misclassification Law, Va. Code Ann. § 40.1-28.7:7; Virginia's paystub transparency requirement, Va. Code Ann. § 40.1-29(C);[1] and Virginia's higher-tier contractor joint liability law, Va. Code Ann. § 11-4.6(C) (collectively, the "Virginia Wage Laws").

17. Plaintiffs seek to represent the following class and subclasses:

a. All individuals who performed carpentry work on the Project for Pillar within three years of the filing of this Complaint (the "Class Period"), were paid by Denise's Drywall, and were paid as independent contractors, without deductions for federal or state taxes, comprised of at least 80 individuals ("the Misclassification Class");

b. A subclass of Misclassification Class members who worked more than 40 hours in any workweek, comprised of at least 60 individuals ("the Overtime Subclass");

[1] Except as expressly noted, all of the conduct alleged in this Complaint occurred before July 1, 2026, and every citation in this Complaint to Virginia's wage and hour statutes is to the version of the cited statute in effect during the relevant period — that is, prior to the amendments enacted by 2026 Va. Acts ch. 1040 (H.B. 238), which took effect July 1, 2026. *See* Va. Code Ann. § 1-214(A). By its own terms, however, Va. Code Ann. § 40.1-29(P) applies to any action to recover unpaid wages commenced on or after July 1, 2026, and Plaintiffs cite that subsection as currently in effect.

c. A subclass of Misclassification Class members who, at any time during the Class Period, (i) received a paycheck from Denise's Drywall that was dishonored or returned for insufficient funds, or (ii) did not receive payment on the regular payday, comprising at least 50 individuals ("the Unpaid Work Subclass").

18. Defendants' wage violations arose from policies and practices that were uniform and applicable to all class and subclass members alike: Pillar exercised supervision over the class members and their work on the Project, including but not limited to setting schedules, leading mandatory morning meetings, assigning daily tasks, maintaining a single timesheet system for all employees paid by Denise’s Drywall, setting hourly pay rates within a narrow range, applying a policy of classifying all workers paid by Denise's Drywall as independent contractors without withholding payroll taxes from their wages, and enforcing a policy of paying Plaintiffs and similarly-situated employees only straight-time rates regardless of the number of hours worked in a workweek.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

20. This Court has supplemental jurisdiction over the Plaintiffs’ state-law claims because they are so related to the federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

21. Venue is proper in this District under 28 U.S.C. § 1391(b), and in the Richmond Division under Local Civil Rule 3(C), because a substantial part of the events or omissions giving rise to the claims occurred in Spotsylvania County, which lies within the Richmond Division.

**PARTIES**

22. Plaintiff Jose R. Bonilla is a Virginia resident. He was an hourly, non-exempt employee of Pillar and performed framing and drywall work on the Project from approximately January 2026 to August 2026. From approximately January through May 2026, he was paid by Denise's Drywall at the rate of $26.00 per hour, typically worked 8-hour days, Monday through Friday, for a 40-hour workweek, occasionally worked a Saturday shift, and was not paid overtime wages for overtime hours. Mr. Bonilla was not paid, or was paid weeks or months late, for wages owed to him for work performed on the Project, including a paycheck in the amount of $1,040.00 that he deposited on May 29, 2026 and that his bank returned unpaid on June 1, 2026. From June through August 2026, Mr. Bonilla continued performing framing and drywall work on the Project but was paid through a different labor provider of Pillar's instead of Denise's Drywall. Mr. Bonilla also received no payment whatsoever for his final workweek during which he performed work on the Project.

23. Plaintiff Carlos Alexi Rodriguez Cabrera is a Virginia resident. He was an hourly, non-exempt employee of Pillar and performed framing and drywall work on the Project from approximately November 2025 to May 2026. He was paid by Denise's Drywall at the rate of $24.00 per hour. Mr. Rodriguez Cabrera regularly worked overtime hours on the Project, including up to approximately 58 hours in a workweek, and was not paid overtime wages for overtime hours. Mr. Rodriguez Cabrera was not paid, or was paid weeks or months late, for wages owed to him for work performed on the Project. Paychecks issued to him by Denise's Drywall were returned unpaid beginning in or about December 2025, including on or about December 18, 2025, and repeatedly thereafter until he stopped working for Denise's Drywall in May 2026.

24. Plaintiff Raul Baires is a Virginia resident. He was an hourly, non-exempt employee of Pillar and performed framing and drywall work on the Project from approximately October 2025 to June 2026. He was paid by Denise's Drywall at the rate of $23.00 per hour. Mr. Baires regularly worked overtime hours on the Project, including up to 58 hours in a workweek, and was not paid overtime wages for overtime hours. Mr. Baires was also not paid, or was paid weeks or months late, for wages owed to him for work performed on the Project during the period April 2026 through June 2026. Mr. Baires stopped working on the Project in June 2026 because he was not being paid.

25. Defendant Hensel Phelps Construction Co. is a wholly-owned subsidiary of Hensel Phelps Part 1, Inc., a Colorado corporation with its principal place of business at 420 6th Avenue, Greeley, CO 80631. At all times relevant to the Complaint, Hensel Phelps has been an enterprise engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA and has earned more than $500,000 in annual gross income, volume of sales made, or business done, and has had two or more employees who handle and otherwise work on goods or materials that have been moved in or produced for commerce, including construction materials that were manufactured out of state. Hensel Phelps is registered as a foreign corporation with the Commonwealth of Virginia, with its Virginia Regional Headquarters located at 1500 Tysons Blvd, Suite 800, Tysons Corner, VA 22102.

26. Defendant Pillar Construction, Inc. is a Virginia corporation with its principal place of business at 5649 General Washington Drive, Suite S, Alexandria, VA 22312. At all times relevant to the Complaint, Pillar has been an enterprise engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA and has earned more than $500,000 in annual gross income, volume of sales made, or business done, and has had two or

more employees engaged in commerce and who handle and otherwise work on goods or materials that have been moved in or produced for commerce, including construction materials that were manufactured out of state.

## FACTUAL ALLEGATIONS

### A. The Project, the Defendants, and the Labor Broker

27. At all times relevant to the Complaint, Defendant Hensel Phelps was the general contractor on the Project.

28. Defendant Pillar is a commercial construction company that performs various types of carpentry work.

29. At all times relevant to the Complaint, Hensel Phelps had a contractual relationship with Pillar whereby Pillar, as a subcontractor, would perform carpentry work on the Project, including framing walls and ceilings, installing drywall, framing doors, and installing insulation.

30. Pillar engaged labor broker Denise’s Drywall to recruit and pay Plaintiffs and similarly-situated employees for the carpentry work performed on the Project. Denise's Drywall served as a labor broker on the Project as early as January 2025, and possibly earlier.

31. Wage theft and worker misclassification through the use of labor brokers is a pervasive and well-documented practice in the commercial construction industry in the Commonwealth. Under this model, a subcontractor such as Pillar engages a labor broker such as Denise’s Drywall—often a thinly capitalized entity with few assets and no independent business presence—to recruit, hire, and nominally "pay" workers, while the subcontractor directs and controls every aspect of the work performed. By routing payment through the labor broker and pretending the workers are the labor broker's independent contractors rather than its own employees, the subcontractor evades a broad range of legal obligations, including the obligations

to pay overtime wages under federal and state law; withhold and remit federal, state, and local payroll and income taxes; provide workers' compensation insurance coverage; comply with federal and state employment discrimination laws; and provide the wage statements, recordkeeping, and other protections required by Virginia's wage payment and paystub transparency statutes. This scheme harms workers, who are denied the wages, benefits, and legal protections to which they are entitled; harms taxpayers, who lose tax revenue that would otherwise have been collected on the workers' earnings; harms law-abiding contractors, who are undercut by competitors willing to break the law; and harms the public, which bears the cost when injured workers without workers' compensation coverage must rely on public assistance and emergency services. The practices alleged in this Complaint are a textbook example of this model.

**B. Pillar Directed and Controlled the Work of Plaintiffs and the Class**

32. Plaintiffs and similarly-situated employees were hired by Pillar’s labor broker Denise’s Drywall to work for Pillar to perform carpentry work on the Project, including framing walls and ceilings, installing drywall, framing doors, and installing insulation. The work Plaintiffs and similarly-situated employees performed on the Project was not of a *bona fide* executive, administrative, or professional nature, or that would otherwise exempt them from the protections of the FLSA and Virginia Wage Laws. With few exceptions, carpentry work on a construction project is never exempt work under the applicable laws.

33. Pillar controlled all aspects of the work that Plaintiffs and similarly-situated employees performed on the Project. Pillar’s foreman on the Project job site set their schedules, assigned their daily work tasks, supervised and inspected their work, and maintained the daily timesheets recording the hours Plaintiffs and similarly-situated employees worked on the Project.

34. Pillar's foreman Hector regularly disciplined Plaintiffs and similarly-situated employees, and both had and exercised the authority to terminate carpentry employees from the Project.

**C. Hensel Phelps Supervised the Work and Set the Pace of Construction**

35. Hensel Phelps supervisors were present on the job site every day that Plaintiffs and similarly-situated employees worked, including on extended hours and Saturdays.

36. Hensel Phelps maintained approximately ten supervisors and superintendents on the Project. Those Hensel Phelps personnel inspected the carpentry work performed by Plaintiffs and similarly-situated employees, and when Hensel Phelps determined that work needed to be performed or corrected, Hensel Phelps personnel directed Pillar's foreman accordingly. Pillar's foreman then relayed those directions to Plaintiffs and similarly-situated employees and pressed them to complete the work. Hensel Phelps thus directed the work of Plaintiffs and similarly-situated employees indirectly, through Pillar's foreman, and observed that work firsthand.

37. On information and belief, Pillar's foremen received bonuses for completing work quickly. When Hensel Phelps communicated its deadlines to Pillar, Pillar's foreman Hector pressed Plaintiffs and similarly-situated employees to work the extended hours and Saturday shifts necessary to meet them.

**D. Hours, Rates, and Pay Practices**

38. Plaintiffs and similarly-situated employees typically arrived at the Project job site by approximately 5:30 a.m., and at the very least 10 to 15 minutes before their 6:00 a.m. start time, in order to sign in for the day. Their standard workday began at 6:00 a.m. with a meeting led by Pillar's supervisors, at which they discussed the work to be performed that day. Plaintiffs and similarly-situated employees typically worked either an 8-hour shift, ending at approximately 2:30

p.m., or a 10-hour shift, ending at approximately 4:30 p.m., Monday through Friday. The shifts included a half-hour unpaid lunch break. In addition, dozens of employees worked an 8-hour shift on Saturdays, resulting in their working workweeks of up to 58 hours or more.

39. Denise's Drywall told Plaintiffs and similarly-situated employees when they were hired that they would not be paid overtime rates for overtime hours no matter how many hours they worked in a workweek on the Project. Specifically, Mr. Denise Barrera, the principal of Denise's Drywall, said that he would not pay overtime because Pillar was not paying him for their overtime.

40. No deductions were made from the paychecks of Plaintiffs and similarly-situated employees for payroll taxes such as for FUTA and FICA, for work performed on the Project, including when they were paid by labor brokers other than Denise's Drywall.

41. Denise's Drywall issued Plaintiffs and similarly situated employees Form 1099-NEC for calendar year 2025, reporting moneys paid in "Nonemployee Compensation" and reflecting no federal income tax withheld. Defendants thus affirmatively documented their treatment of Plaintiffs and similarly-situated employees as non-employees rather than employees, notwithstanding Pillar's direction and control over every material aspect of their work.

42. The paychecks Plaintiffs and similarly-situated employees received for their work on the Project were not accompanied by any wage statement. The checks bore no notation of the hours worked, the applicable rate of pay, or the pay period covered, stating only the worker's name, an amount, and the word "Work."

**E. Defendants Recorded Every Hour Worked and Routed Payment Through the Broker**

43. Each morning, Plaintiffs and similarly-situated employees were required to sign in on a daily timesheet at Pillar's office on the Project job site. The timesheet listed the Project name,

a job number, and the date at the top, and included fields for each employee's name, time in, lunch break time, time out, and total number of hours worked that day. Each timesheet entry was signed by the employee, and each page was also signed by a Pillar foreman. Pillar kept the original timesheets in its job site office and, in turn, transmitted the timesheets to Denise's Drywall so that Plaintiffs and similarly-situated employees could be paid for the hours reflected on them. On information and belief, Pillar also transmitted these timesheets to Hensel Phelps.

44. On Mondays, Plaintiffs and similarly-situated employees were also required to sign into and sign a separate safety sign-in sheet maintained by Hensel Phelps and attend a safety training headed by Hensel Phelps supervisors.

45. Plaintiffs and similarly-situated employees were provided helmets for use on the Project bearing stickers that identified "Kalahari Resorts & Conventions," displayed the Hensel Phelps logo, and included an identifying number. Plaintiffs and similarly-situated employees were required to wear those helmets while working on the Project, and Hensel Phelps personnel observed them wearing the helmets on the job site.

46. Pillar separately sent Hensel Phelps a weekly census of employees. On occasion, Hensel Phelps directed Pillar to add additional employees to different aspects of the Project to meet deadlines.

47. Although Pillar directed, supervised, and controlled Plaintiffs' and similarly-situated employees' work on the Project, Pillar did not pay them directly. Instead, Pillar paid the workers' wages through its labor brokers, such as Denise's Drywall, in a naked attempt to employ a large body of misclassified workers. Pillar structured its labor force this way as a misguided effort to distance itself from its wage-and-hour obligations.

**F. The Paychecks Bounced and Wages Went Unpaid**

48. Beginning in December 2025, and in particular during the period of approximately April 2026 through June 2026, Denise's Drywall's paychecks to Plaintiffs and similarly-situated employees often bounced for insufficient funds. This resulted in the employees not being paid for hours worked on the Project during that time. Plaintiffs persistently complained to Denise's Drywall about the bounced checks and not being paid for their work on the Project, but the matter was not resolved.

49. The frequency of the bounced checks increased between December 2025 and June 2026.

50. Mr. Barrera attributed the bounced paychecks to Pillar's failure to pay Denise's Drywall on time. In a text message exchange conducted in Spanish in December 2025 between Mr. Barrera and a carpentry worker on the Project, Mr. Barrera told the worker that Pillar had not deposited into Denise's Drywall's accounts funds until Tuesday and that as a result some paychecks checks issued before Tuesday were not paid. Again, in late May 2026, when Plaintiff Baires complained that he had received no payment for the preceding two weeks of work, Mr. Barrera told him that Pillar had withheld a check to Denise's Drywall in the amount of approximately $90,000 and that Plaintiff Baires would have to be patient.

51. Plaintiffs and similarly-situated employees regularly paid bank and check cashing fees and penalties when checks bounced. The fees Plaintiffs and similarly-situated employees incurred as a result of the dishonored paychecks included charges of approximately $30.00 per returned check at a check-cashing establishment.

52. Plaintiffs and similarly-situated employees first complained to Defendants about the nonpayment of their wages due to bounced payroll checks as early as April 2026, and

repeatedly thereafter, including directly to Pillar's office staff, who informed a Pillar director, and to Hensel Phelps personnel on site. Despite months of notice, Defendants failed to pay Plaintiffs and similarly-situated employees the wages owed to them, and many remain unpaid to this day. Defendants did not cure their wage violations within fourteen days of being notified, as required to invoke the good-faith defense under Va. Code Ann. § 40.1-29(P). Defendants' failure to cure forecloses any claim of good faith under the statute. To the contrary, Defendants engaged in conduct that establishes their knowing violations of wage and hour laws.

**G. Defendants Procured and Forged Releases of the Unpaid Wages**

53. Specifically, on approximately June 1, 2026, Vanesa Barrera—the wife of Denise's Drywall's principal, Denise Barrera—personally went around the Project job site asking Plaintiffs and similarly-situated employees to sign forms written in English (not Spanish, the language of most of the workers) and entitled "Release and Waiver of Claims," purporting to release "any and all rights or claims" against Denise's Drywall, the Project Owner, and other parties in exchange for wages Plaintiffs and similarly-situated employees had already earned by working ("the release forms"). Ms. Barrera told some employees that they would be paid for their work only if they signed the release forms.

54. After his shift on June 3, 2026, Plaintiff Bonilla asked Pillar foreman Hector at the job site if Pillar was paying Denise's Drywall, because he and his coworkers were not getting paid by Denise's Drywall. Hector directed Plaintiffs to go to the Pillar office, stating that Pillar would resolve the issue and pay them.

55. After Mr. Bonilla talked to Hector, a group of Plaintiffs including Plaintiff Bonilla went straight to Pillar's office at the Project job site to complain about their paychecks bouncing, resulting in their not being paid for all the work they did. Plaintiffs learned for the first time that

even though they had not signed or consented to the release forms, their signatures had been forged on them. Specifically, the Pillar office staff person they spoke to, who was also named Vanesa, told the employees that she hoped they had not signed the release form, and accessed her work computer to check. When she showed Plaintiffs electronic versions of the release forms with their signatures on them, they told her that they had not signed them and that their signatures had been forged.

56. The electronic versions of the signed release forms had a signature date of June 1, 2026—the same date on which Plaintiff Bonilla's bank returned his $1,040.00 paycheck unpaid and a day on which at least some of the employees who purportedly signed the release forms had not even been at the Project job site.

57. On June 4, 2026, another group of Plaintiffs visited Pillar’s office at the Project job site and told a Pillar director, with Pillar’s employee named Vanesa translating for them, that their paychecks had bounced. The Pillar director took the workers’ names, photographed the bounced checks, and told the workers that Pillar would address the issue.

58. After employees complained to Pillar about not being paid, in early June 2026, Pillar froze payments to Denise’s Drywall and told employees that Pillar would pay them directly and would also bring in a replacement labor broker. Notwithstanding these assurances, to date Plaintiffs and similarly-situated employees have not been paid the wages they were denied during the period of at least approximately December 2025 to June 2026.

59. Neither Hensel Phelps nor Pillar resolved the nonpayment of wages issue but instead shifted the payment of their wages to another Pillar labor broker. Although Pillar carpentry workers currently working on the Project continue to be misclassified as independent contractors, they are now being paid overtime wages for overtime hours.

60. Virginia law provides that "[n]o employer shall require any employee, except executive personnel, to sign any contract or agreement which provides for the forfeiture of the employee's wages for time worked as a condition of employment or the continuance therein, except as otherwise provided by law." Va. Code Ann. § 40.1-29(D). The practice of conditioning payment of earned wages on the execution of the broad release and waiver contained in the release forms violated Va. Code Ann. § 40.1-29(D) (version in effect prior to July 1, 2026).

61. The release forms are void and unenforceable. As to those Plaintiffs and similarly-situated employees whose signatures were forged, the forms are void because those individuals never signed or assented to them. As to any Plaintiff or similarly-situated employee who did sign, the forms are unenforceable because they were procured in violation of Va. Code Ann. § 40.1-29(D), and because employees cannot privately waive their rights to wages owed.

62. Pillar's reliance on the release forms, which it kept on its own computers, is further evidence that its failure to pay wages was knowing and willful, and not the result of good faith or reasonable error.

**H. Defendants' Knowledge and Pillar's Pattern of the Same Conduct**

63. Pillar has employed the same scheme on multiple construction projects across the Commonwealth, using different labor brokers as intermediaries to misclassify workers and avoid overtime obligations. For example, in *Graciano v. Pillar Construction Inc.*, No. 1:24-cv-02045 (E.D. Va.), filed in November 2024—months before the conduct at issue in this case—a Pillar construction worker alleged that Pillar and its labor broker, Crystal Drywall, Inc., engaged in the identical practices on two Inova hospital construction projects in Alexandria and Falls Church, Virginia: misclassifying workers as independent contractors, failing to withhold payroll taxes, paying workers at straight-time rates of $25 to $27 per hour regardless of hours worked, and

requiring workers to work approximately ten hours per day, Monday through Saturday, without paying the overtime premium. Pillar's repetition of the same unlawful practices with a different labor broker on a different project confirms that these practices are Pillar's standard business model, not the isolated conduct of a single rogue subcontractor, and that Pillar's violations as alleged in the instant lawsuit were knowing, willful, and not the result of good faith or reasonable error.

64. Hensel Phelps knew or should have known of Pillar's unlawful pay practices before and during the period of the wage violations at issue. Hensel Phelps knew Plaintiffs and similarly-situated employees were on the job site because Hensel Phelps supervisors were present, Hensel Phelps required Plaintiffs and similarly-situated employees to sign in weekly on Hensel Phelps safety forms and Pillar transmitted to Hensel Phelps the timesheets Plaintiffs and similarly-situated employees filled out. Furthermore, Plaintiffs complained to Hensel Phelps supervisory personnel that they were not being properly paid for the work performed on the Project. In addition, at the time Pillar was performing work on the Project, the *Graciano* lawsuit was already pending against Pillar, alleging the identical pattern of misclassification and overtime violations on other Virginia construction projects.

**I. Hensel Phelps's Liability as General Contractor**

65. On information and belief, the construction contract between Hensel Phelps and Pillar for carpentry work on the Project was entered into on or after July 1, 2020.

66. The Project is a construction project other than a single-family residential project, and the value of the Project exceeds $500,000.

67. Virginia law provides that a general contractor "shall be deemed to be the employer of any subcontractor's employees for purposes of § 40.1-29," and that if wages due to

such employees are not paid, "the general contractor shall be subject to all penalties, criminal and civil, to which an employer that fails or refuses to pay wages is subject under § 40.1-29," with such liability to be "joint and several with the subcontractor that failed or refused to pay the wages to its employees." Va. Code Ann. § 11-4.6(C)(2).

68. Hensel Phelps knew or should have known that Pillar was not paying Plaintiffs and similarly-situated employees all wages due, for the reasons set forth above. Hensel Phelps is therefore deemed the employer of Plaintiffs and similarly-situated employees under Va. Code Ann. § 11-4.6(C)(2), and is jointly and severally liable with Pillar for the wages Pillar and its labor brokers failed to pay.

## COUNT I
**Violation of the FLSA—Unpaid Overtime Wages**
**(Brought by Named Plaintiffs Solely on Behalf of Themselves and Solely Against Pillar)**

69. Named Plaintiffs repeat and incorporate by reference all allegations set forth above.

70. The overtime provisions of the FLSA, 29 U.S.C. § 207(a), and its supporting regulations, apply to Defendant Pillar and protect Named Plaintiffs.

71. Named Plaintiffs worked more than 40 hours in one or more workweeks.

72. Pillar, through its labor broker Denise’s Drywall, failed to pay Named Plaintiffs overtime rates for overtime hours.

73. Pillar’s failure to pay Named Plaintiffs overtime wages was willful and not the result of good faith or reasonable error, as evidenced by, among other things, Pillar’s knowledge of the hours worked by the employees as shown on the timesheets and by employee complaints to Pillar employees. Pillar was aware of, and took no steps to remedy, Denise's Drywall's attempt to

conceal the wage theft by inducing workers to sign release forms falsely stating they had been paid in full and releasing all claims for unpaid wages, and by forging the signatures of workers who did not sign. Pillar maintained those release forms on its own computers. Pillar was repeatedly made aware of the wage theft and repeatedly promised to remedy it, but never did.

74. Defendant Pillar is liable to Named Plaintiffs for their unpaid wages, liquidated damages, reasonable attorneys' fees and costs, and any other relief that the Court deems proper.

**COUNT II**
**Violation of the FLSA—Unpaid Minimum Wages**
**(Brought by Named Plaintiffs Solely on Behalf of Themselves and Solely Against Pillar)**

75. Named Plaintiffs repeat and incorporate by reference all allegations set forth above.

76. The minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), and its supporting regulations, apply to Defendant Pillar and protect Named Plaintiffs.

77. Named Plaintiffs performed compensable work on the Project during workweeks for which they received no compensation whatsoever, including workweeks between December 2025 and June 2026.

78. In each such workweek, Named Plaintiffs' effective hourly rate of pay was $0.00, well below the applicable federal minimum wage.

79. Wages are not "paid" under the FLSA when an employer tenders a check that is subsequently dishonored or returned for insufficient funds. Accordingly, the paychecks issued to Named Plaintiffs by Denise's Drywall that were returned for insufficient funds did not constitute payment of wages, and Named Plaintiffs remained unpaid for the hours those checks purported to cover.

80. Pillar, through its labor broker Denise's Drywall, thereby failed to pay Named Plaintiffs at least the applicable minimum wage for all hours worked. Pillar's failure to pay Named Plaintiffs for this work was willful and not the result of good faith or reasonable error, as evidenced by, among other things, Pillar's knowledge that the employees had not been paid because they complained to Pillar employees and Pillar's consequent knowledge of the naked attempt to hide the wage theft by inducing workers to sign the release form that falsely stated that they had been paid in full and releasing all claims for unpaid wages, and the forging of signatures on the release form for employees who did not sign it, which release forms Pillar kept on its own computers.

81. Defendant Pillar is liable to Named Plaintiffs for their unpaid wages, liquidated damages, reasonable attorneys' fees and costs, and any other relief that the Court deems proper.

**<u>COUNT III</u>**
**Violations of the Virginia Misclassification Law**
**(Brought by Named Plaintiffs on Behalf of the Misclassification Class Against Both Defendants)**

82. Named Plaintiffs repeat and incorporate by reference all allegations set forth above.

83. The Virginia Misclassification Law, Va. Code Ann. § 40.1-28.7:7(A) provides that "[a]n individual who has not been properly classified as an employee may bring a civil action for damages against his employer for failing to properly classify the employee if the employer had knowledge of the individual's misclassification."

84. Under Va. Code Ann. § 40.1-28.7:7(B), any individual who performs services for remuneration is presumed to be an employee unless the putative employer proves that the individual is an independent contractor under the Internal Revenue Service guidelines. Plaintiffs and the Misclassification Class members performed carpentry services on the Project for

remuneration and are therefore presumed to be employees. Defendants cannot carry their burden of rebutting that presumption.

85. The Misclassification Class members are "employees" under the Virginia Misclassification Law. The carpentry work they performed on the Project—framing walls and ceilings, installing drywall, framing doors, and installing insulation—was integral to and performed in the usual course of both Defendants' construction businesses, and was not of a *bona fide* executive, administrative, or professional nature or otherwise exempt from the Virginia Wage Laws.

86. The Misclassification Class members were improperly classified as independent contractors as evidenced by Defendants' failure to deduct payroll taxes from their paychecks.

87. The Misclassification Class members are not independent contractors under the Internal Revenue Service guidelines. Pillar directed and controlled the manner and means of their work; set their schedules; assigned their daily work tasks at mandatory morning meetings led by Pillar supervisors; supervised and inspected their work through its on-site foreman; maintained the daily timesheets recording their hours; determined their rates of pay; and controlled hiring and firing. Pillar did not merely possess the authority to discipline and discharge these workers—it exercised that authority regularly. Pillar's foreman routinely disciplined Plaintiffs and similarly-situated employees and terminated them from the Project, a power no principal holds over a genuine independent contractor.

88. Neither the financial arrangements nor the nature of the relationship between the parties is consistent with independent contractor status. Pillar set the hourly rates paid to Plaintiffs and the Misclassification Class members unilaterally, within a narrow range of approximately $23.00 to $26.00 per hour; the class members did not bid for the work, negotiate their rates, or

submit invoices. The class members were paid by the hour for time recorded on Pillar's timesheets, not by the job, the piece, or the completed unit of work. They made no investment in the facilities, scaffolding, lifts, materials, or other significant equipment used on the Project, all of which Pillar or Hensel Phelps supplied; incurred no business expenses, bore no risk of profit or loss, and had no opportunity to increase their earnings other than by working additional hours at the rate Defendants set. They performed carpentry work exclusively for Pillar on the Project, did not advertise or offer carpentry services to the public, and did not hold themselves out as operating independent carpentry businesses. Their engagements were indefinite in duration rather than limited to a defined project, task, or period, and continued until the worker quit or Pillar's foreman terminated him.

89. Pursuant to Va. Code Ann. § 40.1-28.7:7(A) (version in effect prior to July 1, 2026), an employer that has not properly classified an individual as an employee is liable to that individual for all wages, salary, employment benefits—including expenses the individual incurred that would otherwise have been covered by insurance—and other compensation lost as a result of the misclassification, together with reasonable attorneys' fees and the costs of bringing the action.

90. Defendants' improper classification of the Misclassification Class members as independent contractors resulted in damages to the Misclassification Class members in the form of lost wages, workers compensation protection, employer-side payroll taxes that would make them eligible for state and federal benefits, and other benefits to which they may have been entitled had they been properly classified as employees.

91. Defendants knew that the Misclassification Class members were not properly classified as independent contractors. Pillar knew the class members performed carpentry work under Pillar's direction and control, on Pillar's schedule, recorded on Pillar's timesheets, at rates

Pillar set—and Pillar's own foreman disciplined and terminated them. Pillar nonetheless arranged for the class members to be paid through a labor broker, with no payroll tax withholding. Pillar had also been sued in this District before the conduct at issue here, in the *Graciano* action, on allegations that it was misclassifying its carpentry workers as independent contractors on other Virginia projects, and it continued the same practice on this Project. Hensel Phelps likewise knew or should have known of the misclassification: its supervisors were on the job site daily, it required the class members to sign in on its own forms and attend its own safety training, it received a weekly census identifying them, it directed Pillar to move them among areas of the Project, and the *Graciano* action was pending against Pillar throughout the relevant period.

92. Hensel Phelps is jointly and severally liable with Pillar for the misclassification alleged in this Count, pursuant to Va. Code Ann. § 11-4.6(C), as set forth in Paragraphs 64 through 68 above.

93. Defendants are liable to the Misclassification Class members for all owed wages, salary, employment benefits or other compensation, attorneys' fees, costs, and any other and further relief this Court deems appropriate pursuant to Va. Code Ann. § 40.1-28.7:7(A) (version in effect prior to July 1, 2026).

**<u>COUNT IV</u>**
**Paycheck Transparency, Va. Code Ann.**
**§ 40.1-29(D)**
**(Brought by Named Plaintiffs on Behalf of the Misclassification Class**
**Against Both Defendants)**

94. Named Plaintiffs repeat and incorporate by reference all allegations set forth above.

95. Defendants violated Va. Code Ann. § 40.1-29(D) by failing to provide Misclassification Class members with any written statement showing the hours worked, the rate of pay, the gross wages earned, or the deductions taken, for each regular pay date.

96. Defendants' actions were knowing, willful, and in violation of Virginia law. Defendants knew that no payroll taxes were being deducted from the Misclassification Class members' payments.

97. Hensel Phelps is deemed the employer of the Misclassification Class members and is jointly and severally liable with Pillar for the violations alleged in this Count, pursuant to Va. Code Ann. § 11-4.6(C), as set forth in Paragraphs 64 through 68 above.

98. Defendants are liable to the Misclassification Class members for all wages, salary, employment benefits, and other compensation owed, prejudgment interest, reasonable attorneys' fees and costs, and any other relief this Court deems appropriate, pursuant to Va. Code Ann. §§ 40.1-29(C), 40.1-29(G), and 40.1-29(J) (versions in effect prior to July 1, 2026).

**CLASS ACTION ALLEGATIONS FOR COUNTS III AND IV**

99. Named Plaintiffs Jose Bonilla, Carlos Alexi Rodriguez Cabrera, and Raul Baires bring Counts III and IV as class representatives on behalf of themselves and the Misclassification Class defined in Paragraph 17(a) above.

100. Named Plaintiffs reserve the right to name additional class representatives and to revise the class definition or to identify sub-classes and sub-class representatives as may be necessary and appropriate.

101. Ascertainability. The identity of all members of the class is readily ascertainable from Defendants' records, including the daily timesheets Pillar maintained at its job site office, the weekly employee censuses Pillar transmitted to Hensel Phelps, and the payroll records of Denise's Drywall. Class notice can be provided to all class members by conventional means such as U.S. mail, email, text and workplace postings.

102. Numerosity. The size of the class makes a class action both necessary and efficient. Upon information and belief, at least 80 individuals performed carpentry work on the Project for Pillar and were paid by Denise's Drywall without deduction of payroll taxes during the Class Period. Members of the class are ascertainable but so numerous that joinder is impracticable.

103. Common Questions of Law and Fact. This case poses common questions of law and fact, which are likely to generate common answers advancing resolution of the litigation, affecting the rights of all class members, including:

a. Whether Defendant Pillar had a practice and policy of misclassifying Plaintiffs and class members as independent contractors by not deducting payroll taxes from their paychecks;

b. Whether Defendant Pillar's misclassification of Plaintiffs and class members was willful and not in good faith;

c. Whether Defendant Pillar possessed and exercised the authority to discipline and terminate Plaintiffs and class members;

d. Whether the payments Defendants issued were accompanied by a written statement showing the hours worked and the rate of pay, or instead were simple checks showing only the worker's name and a total amount paid.

104. Typicality. The claims of the Named Plaintiffs are typical of the claims of the class as a whole. Defendants' unlawful wage policies and practices, which have operated to deny the Misclassification Class members required wages, are typical of the unlawful wage policies and practices that have operated to deny other class members lawful compensation.

105. Adequacy of Class Representation. The Named Plaintiffs can adequately and fairly represent the interests of the class as defined above, because their individual interests are consistent with, not antagonistic to, the interests of the class.

106. Adequacy of Counsel for the Class. Counsel for Misclassification Class members have the requisite resources and ability to prosecute this case as a class action and are experienced labor and employment and class action attorneys who have successfully litigated other cases involving similar wage and hour issues, including on a class-action basis.

107. Propriety of Class Action Mechanism. This claim is properly maintainable as a class action under Federal Rule of Civil Procedure 23 because, in addition to satisfying Rule 23(a) requirements as set forth above, Rule 23(b)(3) is satisfied here because the common questions of law and fact predominate over any questions affecting only individual members of the class. For all these and other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy set forth in this Complaint.

**COUNT V**
**VWPA — Unpaid Overtime Wages, Va. Code Ann. § 40.1-29**
**(Brought by Named Plaintiffs on Behalf of the Overtime Subclass Against Both Defendants)**

108. Named Plaintiffs repeat and incorporate by reference all allegations set forth above.

109. The VWPA did not define "wages" during the relevant period. The term is naturally read to encompass all remuneration an employer owes an employee for work performed, including overtime premiums. The General Assembly confirmed as much in 2026, amending § 40.1-29 to define "wages" expressly to include "hourly wages, minimum wages, piece rate wages, day rates, salaries, overtime wages, legally required prevailing wages, commissions, tips, bonuses, and damages available due to the misclassification of an employee in violation of § 40.1-28.7:7." Va.

Code Ann. § 40.1-29(A)(2); 2026 Va. Acts ch. 1040. That definition clarifies, rather than expands, the scope of the term as it has always applied. The unpaid overtime premiums owed to the Overtime Subclass members are wages within the meaning of Va. Code Ann. § 40.1-29.

110. Overtime Subclass members worked more than 40 hours in one or more workweeks on the Project, as reflected on the daily timesheets Pillar maintained at its job site office and transmitted to Denise's Drywall for payment.

111. Pillar, through its labor broker Denise's Drywall, paid Overtime Subclass members only their straight-time hourly rate for those hours, and did not pay one and one-half times their regular rate of pay for hours worked in excess of 40 in a workweek.

112. Defendants thereby failed to pay the Overtime Subclass members all wages due, in violation of Va. Code Ann. § 40.1-29.

113. Defendants' violation was knowing, willful, and not in good faith. Denise's Drywall told Overtime Subclass members when they were hired that they would not be paid overtime rates no matter how many hours they worked in a workweek on the Project. Mr. Barrera stated that he would not pay overtime because Pillar was not paying him for the workers' overtime, establishing that the policy of paying only straight-time rates originated with Pillar. Pillar's foreman set the extended daily and Saturday schedules, and Pillar maintained the timesheets recording every hour the Overtime Subclass members worked.

114. Hensel Phelps is deemed the employer of the Overtime Subclass members and is jointly and severally liable with Pillar for the wages alleged in this Count, pursuant to Va. Code Ann. § 11-4.6(C), as set forth in Paragraphs 64 through 68 above.

115. Overtime Subclass members are entitled to recover their unpaid overtime wages, an additional equal amount as liquidated damages, prejudgment interest at eight percent per year,

reasonable attorney fees and costs, and—because Defendants knowingly failed to pay the wages owed—an amount equal to triple the wages due, pursuant to Va. Code Ann. §§ 40.1-29(G) and 40.1-29(J) (versions in effect prior to July 1, 2026), jointly and severally against both Defendants.

**COUNT VI**
**Violation of the Virginia Overtime Wage Act, Va. Code § 40.1-29.2**
**(Brought by Named Plaintiffs on Behalf of the Overtime Subclass Against Both Defendants)**

116. Named Plaintiffs repeat and incorporate by reference all allegations set forth above.

117. Overtime Subclass members worked more than 40 hours in one or more workweeks.

118. Defendant Pillar failed to pay Overtime Subclass members at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek, as required by the Virginia Overtime Wage Act, Va. Code § 40.1-29.2.

119. Hensel Phelps is deemed the employer of the Overtime Subclass members and is jointly and severally liable with Pillar for the violations alleged in this Count, pursuant to Va. Code Ann. § 11-4.6(C), as set forth in Paragraphs 64 through 68 above.

120. Pillar's violations of the Virginia Overtime Wage Act were knowing, willful, and not in good faith.

121. Overtime Subclass members are entitled to their unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment interest at eight percent per year, reasonable attorneys' fees and costs, and—because Defendants knowingly failed to pay the wages owed—an amount equal to triple the wages owed, pursuant to Va. Code Ann. §§ 40.1-29(G), 40.1-29(J), and 40.1-29.2 (versions in effect prior to July 1, 2026).

**COUNT VII**

**VWPA — Unpaid and Untimely Paid Wages, Va. Code Ann. § 40.1-29**
**(Brought by Named Plaintiffs on Behalf of the Unpaid Work Subclass Against Both Defendants)**

122. Named Plaintiffs repeat and incorporate by reference all allegations set forth above.

123. The wages owed to the Unpaid Work Subclass members for their work on the Project are wages within the meaning of Va. Code Ann. § 40.1-29, as set forth in Paragraph 109 above.

124. Unpaid Work Subclass members performed compensable carpentry work on the Project, and the hours they worked are recorded on the daily timesheets Pillar maintained at its job site office and transmitted to Denise's Drywall for payment.

125. Beginning in December 2025 and continuing through June 2026, Denise's Drywall tendered paychecks to Unpaid Work Subclass members that were dishonored or returned for insufficient funds, and on other occasions failed to tender any payment on the regular payday for hours recorded on Pillar's timesheets.

126. A check that is dishonored or returned for insufficient funds does not constitute payment of wages. Unpaid Work Subclass members accordingly remained unpaid for the hours those checks purported to cover.

127. Some Unpaid Work Subclass members received the wages owed to them only weeks or months after those wages were due; some received only partial payment of the wages owed; and some have never been paid at all for the hours at issue.

128. Defendants thereby failed to pay, and failed to timely pay, the Unpaid Work Subclass members all wages due, in violation of Va. Code Ann. § 40.1-29(P).

129. Defendants' violation was knowing, willful, and not in good faith. Unpaid Work Subclass members complained repeatedly about the bounced paychecks and the nonpayment of their wages— to Denise's Drywall beginning as early as December 2025, and to Pillar's office staff, a Pillar director, and Hensel Phelps personnel on site beginning as early as April 2026. Rather than pay the wages owed, Denise's Drywall circulated the release forms and forged the signatures of workers who did not sign them, and Pillar maintained those release forms on its own computers. Defendants did not cure the violations within fourteen days of being notified.

130. Hensel Phelps is deemed the employer of Unpaid Work Subclass members, and is jointly and severally liable with Pillar for the wages alleged in this Count, pursuant to Va. Code Ann. § 11-4.6(C), as set forth in Paragraphs 64 through 68 above.

131. Unpaid Work Subclass members are entitled to recover their unpaid wages; for wages paid after they were due, damages and interest for the period of delay; the bank and check-cashing fees and penalties they incurred as a result of the dishonored paychecks; treble damages for Defendants' knowing violation; prejudgment interest; and reasonable attorneys' fees and costs, jointly and severally against both Defendants, as provided under Va. Code Ann. § 40.1-29.

**COUNT VIII**
**Violation of the Virginia Minimum Wage Act, Va. Code § 40.1-28.8 *et seq.***
**(Brought by Named Plaintiffs on Behalf of the**
**Unpaid Work Subclass Against Both Defendants)**

132. Named Plaintiffs repeat and incorporate by reference all allegations set forth above.

133. Unpaid Work Subclass members were "employees" of Defendants as defined by the Virginia Minimum Wage Act, Va. Code § 40.1-28.9.

134. Defendant Pillar is an "employer" of Unpaid Work Subclass members as defined by the Virginia Minimum Wage Act, Va. Code § 40.1-28.9.

135. Hensel Phelps is deemed the employer of the Unpaid Work Subclass members and is jointly and severally liable with Pillar for the violations alleged in this Count, pursuant to Va. Code Ann. § 11-4.6(C), as set forth in Paragraphs 64 through 68 above.

136. Pillar failed to pay Unpaid Work Subclass members at least the applicable minimum wage for all hours worked, in violation of the Virginia Minimum Wage Act, Va. Code § 40.1-28.10 (version in effect prior to July 1, 2026).

137. Pillar's violations of the Virginia Minimum Wage Act were knowing, willful, and not in good faith.

138. Unpaid Work Subclass members are entitled to recover the amount of their unpaid minimum wages, plus interest at eight percent per annum from the date or dates said wages were due, and reasonable attorney's fees, pursuant to Va. Code Ann. § 40.1-28.12 (version in effect prior to July 1, 2026).

**CLASS ACTION ALLEGATIONS FOR COUNTS V THROUGH VIII**

139. Named Plaintiffs Jose Bonilla, Carlos Alexi Rodriguez Cabrera, and Raul Baires bring Counts V and VI as class representatives on behalf of themselves and the Overtime Subclass defined in Paragraph 17(b) above.

140. Named Plaintiffs Jose Bonilla, Carlos Alexi Rodriguez Cabrera, and Raul Baires bring Counts VII and VIII as class representatives on behalf of themselves and the Unpaid Work Subclass defined in Paragraph 17(c) above.

141. Named Plaintiffs reserve the right to name additional class representatives and to revise the subclass definitions or to identify additional subclasses and subclass representatives as may be necessary and appropriate.

142. Ascertainability. The identity of all members of the subclasses is readily ascertainable from Defendants' records, including the daily timesheets Pillar maintained at its job site office, the weekly employee censuses Pillar transmitted to Hensel Phelps, and the payroll records of Denise's Drywall. Class notice can be provided to all subclass members by conventional means such as U.S. mail, email, text and workplace postings.

143. Numerosity. The size of each of the subclasses makes a class action both necessary and efficient. Upon information and belief, the Overtime Subclass consists of more than 60 current or former Pillar carpentry workers who worked more than 40 hours in one or more workweeks during the Class Period. Upon information and belief, the Unpaid Work Subclass consists of more than 50 current or former Pillar carpentry workers who received a paycheck from Denise's Drywall that was dishonored or returned for insufficient funds, or who did not receive payment on the regular payday for hours recorded on Pillar's timesheets, during the Class Period. Members of each of the subclasses are ascertainable but so numerous that joinder is impracticable.

144. **Calculability of Damages.** The damages suffered by members of the Overtime Subclass and the Unpaid Work Subclass are capable of measurement on a classwide basis using a common methodology, drawn principally from records in Defendants' possession. Pillar maintained daily timesheets for every worker on the Project recording each worker's name, time in, lunch break, time out, and total daily hours, signed by the worker and countersigned by a Pillar foreman; Pillar transmitted those timesheets to Denise's Drywall for payment; and the hourly rate for each worker is known and was set within a narrow range. The specific workweeks for which each class member was not paid, or was paid late, are determinable by comparing Pillar's timesheets against Denise's Drywall's payroll and bank records.

145. For the Overtime Subclass, damages are calculable by applying the statutory overtime premium of one and one-half times the regular rate to all hours recorded in excess of 40 in each workweek—a straightforward arithmetic calculation requiring no individualized proof and common to every subclass member.

146. For the Unpaid Work Subclass, damages are calculable by comparing the hours recorded on Pillar's timesheets against the payments actually received, as reflected in Denise's Drywall's payroll records and in the bank records identifying the checks that were dishonored; where a worker received no compensation for a workweek in which hours were recorded, the shortfall against both the contract rate and the applicable minimum wage is determinable by the same arithmetic. Because the critical inputs—hours worked, hourly rates, and payments made—are documented in Defendants' own uniform records and in the workers' bank records, damages can be determined on a class-wide basis without individualized inquiry, and common questions predominate over any individual issues.

147. <u>Common Questions of Law and Fact</u>. This case poses common questions of law and fact, which are likely to generate common answers advancing resolution of the litigation, affecting the rights of all class members, including but not limited to:

a. Whether Plaintiffs and the subclass members were employees of Pillar rather than independent contractors;

b. Whether Pillar possessed and exercised the authority to supervise, discipline, and terminate Plaintiffs and the subclass members;

c. Whether Pillar required, suffered, or permitted the Overtime Subclass members to work more than 40 hours in a workweek;

d. Whether Pillar, through Denise's Drywall, failed to pay the Overtime Subclass members one and one-half times their regular rate of pay for hours worked in excess of 40 in a workweek;

e. Whether Pillar, through Denise's Drywall, tendered paychecks that were dishonored or returned for insufficient funds;

f. Whether the issuance of bounced paychecks resulted in Pillar failing to pay the Unpaid Work Subclass members all wages due on the regular payday;

g. Whether Pillar, on its own or through Denise’s Drywall, issued payment of wages to the Unpaid Work Subclass once the bounced paychecks were brought to its attention;

h. Whether the issuance of bounced paychecks resulted in Pillar failing to pay the Unpaid Work Subclass members at least the applicable minimum wage for all hours worked;

i. Whether Defendants conditioned payment of earned wages on execution of the release forms in violation of Va. Code Ann. § 40.1-29(D), and whether the release forms are void and unenforceable;

j. Whether Hensel Phelps knew or should have known that Pillar was not paying Plaintiffs and the subclass members all wages due;

k. Whether the Project is a construction project other than a single-family residential project with a value exceeding $500,000, such that Hensel Phelps is jointly and severally liable under Va. Code Ann. § 11-4.6(C);

l. Whether Hensel Phelps is deemed the employer of Plaintiffs and the subclass members under Va. Code Ann. § 11-4.6(C)(2); and

m. Whether Defendants' violations of the Virginia Wage Laws were knowing, willful, and not in good faith.

148. Typicality. The claims of the Named Plaintiffs are typical of the claims of the members of the subclasses. Defendants' wage policies and practices, which have operated to deny the Overtime Subclass members and the Unpaid Work Subclass members legally-required wages, are typical of the unlawful wage policies and practices that have operated to deny other subclass members lawful compensation.

149. Adequacy of Class Representation. The Named Plaintiffs can adequately and fairly represent the interests of the subclasses as defined above, because their individual interests are consistent with, not antagonistic to, the interests of the subclasses.

150. Adequacy of Counsel for the Class. Counsel for the Overtime Subclass and the Unpaid Work Subclass have the requisite resources and ability to prosecute this case as a class action and are experienced labor and employment and class action attorneys who have successfully litigated other cases involving similar wage and hour issues, including on a class-action basis.

151. Propriety of Class Action Mechanism. This claim is properly maintainable as a class action under Federal Rule of Civil Procedure 23 because, in addition to satisfying Rule 23(a) requirements as set forth above, Rule 23(b)(3) is satisfied here because the common questions of law and fact predominate over any questions affecting only individual members of the subclasses. For all these and other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy set forth in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

a. Certify the Misclassification Class under Rule 23(b)(3) as to Counts III and IV, and the Overtime Subclass and the Unpaid Work Subclass under Rule 23(b)(3) as to Counts V through VIII; in the alternative, certify the common issues identified herein under Rule 23(c)(4); and appoint Named Plaintiffs as class representatives and the undersigned attorneys as class counsel;

b. Grant judgment against Pillar in favor of each Plaintiff in the amount of each Plaintiff's respective unpaid wages plus an equal amount in liquidated damages, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b);

c. Grant judgment against Defendants, jointly and severally, and in favor of Plaintiffs, the Misclassification Class members, the Overtime Subclass members, and the Unpaid Work Subclass members in the amount of each Plaintiff's and class member's respective unpaid wages and benefits, or, for wages paid but not timely paid, liquidated damages and interest for the period of delay, pursuant to the Virginia Wage Laws, liquidated damages and treble damages pursuant to Va. Code Ann. §§ 40.1-29(G) and 40.1-29(J) (versions in effect prior to July 1, 2026);

d. Award Plaintiffs statutory damages to the fullest extent permitted under the law;

e. Award Plaintiffs prejudgment interest at 8 percent per year from the date of violations until judgment, and post-judgment interest at the legal rate thereafter;

f. Award such other relief as this Court deems just and proper.

Dated: August 13, 2026

Respectfully submitted,

*/s/ Mark Hanna*

Mark Hanna (Virginia Bar No. 45442)
Murphy Anderson PLLC
1401 K Street NW, Suite 300
Washington, DC 20005
Phone: (202) 223-2620
mhanna@murphypllc.com

*Counsel for Plaintiffs*